**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 20-190 |
| ) | |
| JOSHUA BIRRELL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER OF COURT**

Presently before the Court is a Motion to Revoke Detention Order (Docket No. 117) filed by Defendant Joshua Birrell ("Defendant"). Defendant requests that this Court review the order of detention pending trial issued by Chief Magistrate Judge Cynthia Reed Eddy (Docket No. 114) and enter an order releasing him from pretrial custody with certain conditions. The Government filed a Response in opposition. (Docket No. 127). Defendant has also provided supplemental information in support of revocation and a Memorandum in Support. (Docket Nos. 130, 132). After careful consideration of the parties' positions, and after a review of the detention hearing transcript ("Transcript")[1] and the referenced Pretrial Services Report, Defendant's motion is denied.

**I.     PROCEDURAL HISTORY**

On August 12, 2020, Defendant was charged in an Indictment with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21

---

1    An official transcript of the detention hearing has not been unsealed although the deadline for requests of redaction(s) is now past due. (Docket No. 119).

1

U.S.C. § 846. (Docket No. 1). The Government filed a request for detention and Defendant waived his right to a detention hearing on August 18, 2020. (Docket Nos. 23, 59).

Defendant subsequently requested a detention hearing, and Judge Eddy held a detention hearing on December 16, 2020; she issued her ruling on the record and then entered a written order of detention pending trial. (Docket Nos. 111, 113, 114). Donna Haith, Defendant's mother in law who lives in California, described Defendant's history of drug and alcohol abuse after he was in a motorcycle accident. She further described him as fully employable as an electrician and as a wonderful father to his two daughters, who remain in California with their mother. (Transcript at 9). Defendant and his wife are separated and he has lived in Pennsylvania for four years. Ms. Haith was unaware of Defendant's involvement with methamphetamine trafficking or involvement with the Pagans Motorcycle Club in the western District of Pennsylvania.

Judge Eddy considered a memorandum of the United States Probation Office & Pretrial Services Office, submitted by officer Wendy M. Brown on December 16, 2020. In the memorandum, Ms. Brown explained that Defendant requested release and in-home custodial arrangements be made with Vicki Atkinson, who lives in Pittsburgh and who lacks a criminal record. Ms. Atkinson was not present at the hearing and thus could not be questioned as the appropriateness of placing Defendant with her pending trial. Ms. Brown did not object to placement with Ms. Atkinson, nor did she recommend it. Instead, she recommended Defendant be placed in an inpatient treatment program prior to any release to the community. (Transcript at 34).

Judge Eddy also considered a full bond report dated August 17, 2020. That bond report, reviewed by the undersigned, stated there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community.

Therefore, Pretrial Services Officer Philip T. Spicuzza respectfully recommended the defendant be detained.

Judge Eddy found that the rebuttable presumption under 18 U.S.C. § 3142(e)(3) was triggered in this case based on the nature of the charges against Defendant, and although Defendant introduced sufficient evidence to rebut the presumption, after considering the presumption and other factors listed in the detention order and stated on the record, detention is warranted. (Transcript at 35).  She further found that the information presented at the detention hearing established by clear and convincing evidence that there is no condition or combination of conditions which would reasonably assure the safety of any other person and  the community if Defendant is released, or  which would reasonably assure the defendant's appearance, given his prior failure to appear for legal proceedings . (Id.).  Along with Judge Eddy's findings made on the record at the hearing,[2] she specified in the order the following reasons for detention: the weight of the evidence against Defendant is strong; he is subject to a lengthy period of incarceration if convicted; his prior criminal history; his participation in criminal activity while on probation, parole or supervision; his history of alcohol or substance abuse; his lack of stable employment; his lack of stable residence,  his lack of significant community or family ties to this district;  his prior

---

2   Judge Eddy explained on the record that Defendant is facing serious charges and the weight of the evidence is strong, as reflected by the grand jury's finding of a true bill on the indictment which establishes probable cause that the offenses occurred.  Judge Eddy further explained that she was particularly compelled by Defendant's history, including that he  has no meaningful ties to the Western District of Pennsylvania, no verified employment history since he has been in Pennsylvania,  and despite having no employment defendant showed a monthly cash flow of $5,400. Judge Eddy further noted Defendant has an extensive history of substance abuse dating back to 2002 and had been at an inpatient facility as recently as May of 2019, and outpatient treatment as recently as July of 2019.  Defendant's criminal history includes grand theft, second degree burglary, felony possession with intent to deliver controlled substances, assault; several of these offenses occurred while defendant was on bond for other charges.  Despite Defendant's d friend Atkinson's willingness to serve as a third-party custodian for him, Judge Eddy found that Defendant's recurrent criminal charges support a conclusion that he would be a danger to the community if he is released.

failure to appear in court as ordered; background information unknown or unverified; and his prior violations of probation, parole or supervised release. (Id. at 2-3).

On December 21, 2020, Defendant moved this Court to review the detention order and requests that he be released pending trial. (Docket No. 117). Defendant submits that the instant offense does not involve a crime of violence and he has no history of any said crimes, he has no history of escape or fleeing and eluding, he has training as an electrician and is a member of the electrician's union, he has the support of family and friends to assist him in maintaining sobriety, he has some health concerns, and that although he is originally from California, his estranged wife and children "are likely moving to western Pennsylvania to support him." (Docket No. 117 at 1-2). Finally, he submits that this court would be able to fashion conditions which would reasonably assure his appearance as required and the safety of any other person and the community, such as a requirement to successfully completely inpatient drug and alcohol treatment, followed by home detention with location monitoring. (Id. at 2).

As previously stated, the Government opposes Defendant's request for release pending trial. (Docket No. 127).

## II.     ANALYSIS

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq*. (the "BRA"), governs release and detention pending judicial proceedings. Under the BRA, a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. §3142(b). Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be

ordered. 18 U.S.C. §3142(e). Certain cases raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies, among others, to cases in which there an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3). An indictment charging a defendant with committing an offense enumerated in § 3142(e)(3) is sufficient to establish probable cause triggering the rebuttable presumption. United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Defendant is charged with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. Id. Count One carries a mandatory minimum of ten (10) years' imprisonment to a maximum of life; however, for a defendant with a prior conviction for a serious drug felony or a serious violent felony, that is final, this charge carries a mandatory minimum of fifteen (15) years' imprisonment to a maximum of life. See Doc. No. 4 (Information Memorandum); Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii). This charge raises the rebuttable presumption that no condition or combination of conditions will reasonably assure Defendant's appearance and the safety of the community. See 18 U.S.C. § 3142(e)(3).

A defendant may rebut the presumption in §3142(e) by producing "some credible evidence ... that he will appear and will not pose a threat to the community." United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986). The defendant's burden of production is relatively light. United States v. Chagra, 850 F. Supp. 354, 357 (W.D. Pa. 1994) (citation omitted). If the defendant rebuts the presumption, the burden of persuasion remains with the government. Id. Thus, the

government bears the burden of proving that defendant presents either a risk of flight or a danger to the community.[3]

With respect to review of a magistrate judge's detention order, 18 U.S.C. § 3145(b) provides:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). A district judge exercises de novo review over a detention order entered by a magistrate judge. United States v. Delker, 757 F.2d 1390, 1394-95 (3d Cir. 1985). "De novo review does not require an additional evidentiary hearing[,]"and the district court "may make its independent determination based solely upon the evidence introduced at the prior hearing." United States v. Burgess, No. 2:09-CR-150, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009) (citations omitted). A district court may further incorporate the transcript of the hearing before the magistrate judge, including any exhibits admitted therein. United States v. Chagra, 850 F. Supp. 354, 357 (W.D. Pa. 1994). The district court "may also consider any additional evidence or proffers submitted in conjunction with any supplemental proceedings." Burgess, No. 2:09-CR-150, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009) (quoting United States v. Farris, 2008 WL 1944131, *7 (W.D. Pa. 2008)).

The Court agrees with Judge Eddy that Defendant did introduce sufficient evidence to rebut the applicable presumption that no conditions will reasonably assure the safety of the

---

3   The Government must prove by a preponderance of the evidence that the defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial. United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986). The Government must prove by clear and convincing evidence that the defendant is a danger to the safety of any other person or the community. United States v. Delker, 757 F.2d 1390, 1399 (3d Cir. 1985).

community.[4]  See Docket No. 114 at 2.  The Court further concludes that, the Government has presented clear and convincing evidence that pretrial detention was and is appropriately ordered in this case.  In reaching these decisions, the Court has conducted an independent examination of the record evidence and balanced the four factors set forth in 18 U.S.C. §3142(g), which include the following:

> 1) the nature and circumstances of the offense charged, including . . . whether they involve a controlled substance;
> 2) the weight of the evidence against the person;
> 3) the history and characteristics of the person, including --
>     (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
> 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. §3142(g).  In addition, Section 3142(i) also provides a "limited safety valve provision" allowing a court to re-examine a detention decision. See United States v. Washington-Gregg, No. 19-331, 2020 WL 1974880, at *5 (M.D. Pa. Apr. 24, 2020). Under this section, a Court may grant temporary release if it "determines such release to be necessary for preparation of the person's defense or for another compelling reason." The defendant bears the burden of making an "individualized and specific showing of a compelling reason[ ]" for release. United States v. Brown, No. 19-259, 2020 WL 2036715, at *4 (M.D. Pa. Apr. 28, 2020). "[C]ourts have used this provision sparingly to permit a defendant's release where, for example, he is suffering from a

---

[4]    This Court exercises de novo review over the detention order entered by the magistrate judge.  See Delker, 757 F.2d at 1394-95.  No evidentiary hearing is required before this Court because the record was fully developed before Judge Eddy, and "[t]his court may make its independent determination" on the issue of pretrial detention "based solely upon the evidence introduced at the prior hearing."  United States v. Burgess, No. 2:09-cr-150, 2009 WL 2038148 at *1 (W.D. Pa. July 8, 2009) (citations omitted).  Consequently, the Court has considered the unofficial transcript of the proceedings before Judge Eddy, along with the referenced Pretrial Services Report.

7

terminal illness or serious injuries." United States v. Hajiev, 460 F. Supp.3d 553, 555 (E.D. Pa. 2020) (internal quotations and citation omitted).

The Court finds that the evidence proffered at the detention hearing favors the Government on each of these cited factors. First, Defendant has been indicted for a very serious controlled substance offense, which carries at least a mandatory minimum of ten (10) years' imprisonment to a maximum of life. As such, this factor weighs against Defendant.

In addition, Judge Eddy correctly observed on the record that the weight of the evidence against Defendant is strong, as reflected by the grand jury's return of the Indictment which establishes probable cause that the offenses occurred. Michael Lafferty, a detective with the City of Pittsburgh assigned to the FBI Greater Pittsburgh Safe Streets Task Force, testified that investigators identified Defendant during the course of an investigation into methamphetamine trafficking by members and associates of the Pagan's Motorcycle Club in this District, as a methamphetamine source of supply for at least two individuals, who were involved in the Pagan's Motorcycle Club, Jeanette Chapter. Additionally, TFO Lafferty testified that the investigation revealed that Defendant obtained methamphetamine through various sources, including the Dark Web, and often utilized the U.S. Mail to receive packages in the names of other individuals, considering he had no specific place of residence within the Western District of Pennsylvania. (Transcript at 17-18). The Court agrees with Judge Eddy as to this factor. While recognizing that Defendant is presumed innocent of the charged offense, the weight of the evidence against Defendant favors pretrial detention.

Third, with respect to Defendant's history and characteristics, this Court shares Judge Eddy's concern about his criminal history. As she observed, the Pretrial Services Report indicates Defendant's criminal history includes grand theft, second degree burglary, felony possession with

8

intent to deliver controlled substances, assault, and further, that several of these offenses occurred while defendant was on bond for other charges. Ultimately, Defendant was charged with committing the instant offenses while on bond for a prior offense dated March 14, 2020. Despite this pattern of unlawful behavior, Defendant now claims that should he be released pending trial he would comply with any conditions of release imposed by the Court. Defendant's robust criminal history strongly suggests otherwise. Defendant has committed crimes while on bond and while on probation, which demonstrates to this Court that supervision (and even detention) has done little to deter him from engaging in criminal activity. Other than Defendant's assertion that he would value his freedom and comply with any conditions imposed, he has proffered no evidence that he has the potential to maintain a law-abiding life if released. See Carbone, 793 F.2d at 560.

With that said, Defendant has suggested that we impose a requirement he successfully complete inpatient drug and alcohol treatment, followed by home detention with location monitoring. (Docket No. 117 at 2). As to Defendant's suggestion concerning his placement with a third party, "the mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether release or detention is appropriate in a given case." United States v. Bey, Crim. No. 15-87, 2015 WL 7176340, at *5 (W.D. Pa. Nov. 13, 2015). Judge Eddy was well-aware of Ms. Atkinson's willingness to serve as a third-party custodian, but rejected the idea given Defendant's recurrent criminal charges which compelled her to conclude that he would be a danger to the community if released. And although Ms. Haith testified that the willingness to support Defendant, she had no knowledge of his involvement with any form of organized crime activity or with methamphetamine trafficking. This Court shares Judge Eddy's concern about a third-party custodian, regardless of who would assume that role. Although others

may be well-intentioned, the mere fact that they are willing to serve as a third-party custodian does not mean that they could adequately supervise a defendant who is charged with a serious drug trafficking and firearms offense, or monitor his behavior so as to comply with court orders. The Court finds that the totality of Defendant's history and characteristics indicate that Defendant's release poses a legitimate risk of nonappearance and a danger to the community, and thus finds that this factor weighs in favor of pretrial detention.

As to the final factor, the nature and seriousness of the danger to the community that would be posed by Defendant's release likewise favors pretrial detention in this case.  Drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of very dangerous drugs like methamphetamine. United States v. Atkins, Crim. No. 15-87, 2015 WL 4920831 at *7 (W.D. Pa. Aug. 18, 2015) (citing United States v. Gibson, 481 F.Supp.2d 419, 423 (W.D. Pa. 2007) ("violence is not the only danger to the community this court must consider.  The court must also consider the danger of trafficking in illicit drugs.")).  Therefore, this final factor weighs strongly in favor of detention.

To the extent Defendant is requesting we permit his release pursuant to Section 3142(i), i.e. the "limited safety valve provision,  due to his asthma, or even, to the extent he argues this is a compelling reason for his temporary release otherwise under the BRA, we find that current pandemic and risk of contracting COVID-19 also does not present a compelling reason for Defendant's temporary release. Defendant is thirty-eight years old and, from the  record before us, has mild asthma.  Judge Eddy reviewed the evidence of this condition, noting that early on after he was arrested, in his own bond report, Defendant characterized his health as "good" and reported further that he was not under the care of a medical doctor nor prescribed any medications; there is no mention of asthma. Upon detention at the Allegheny County Jail ("ACJ") after his arrest in

mid-August 2020, Defendant was treated for detoxification which was discontinued upon no further symptoms.  (Transcript at 31).  He was given pain medication for a back injury, but showed no signs of asthma.  On October 5, 2020 he was assessed with "mild persistent asthma" and diagnosed with "mild asthma" for which he was prescribed an inhaler.  (Docket No. 132 at 5).  On October 16, 2020, Defendant was placed in a single cell due to asthma at his request.  (Docket No. 132 at 4).   He has been given medication for anxiety and depression.  (Transcript at 32).  According to Defendant's counsel, since the time Defendant was placed in a single cell to reduce exposure, he was given a cellmate, who is also "at elevated risk for COVID-19.  As this court may be aware, there has been an increase in COVID cases at ACJ, including both staff and inmates." (ECF No. 132 at 1).   Defendant's counsel cites to, inter alia,  the Center for Disease Control and Prevention guidelines, which  indicate that people with "moderate to severe asthma" must take extra precautions to avoid contracting COVID-19, including the advice from public health officials:  washing hands, avoiding close contact, staying at least 6 feet from other people, and wearing mask.  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html; (ECF 132 at 1).  However, the CDC warnings address those who have been diagnosed with moderate to severe asthma, who may be at "higher risk of getting very sick"; there is no record evidence that Defendant suffers from anything more than mild asthma.

In addition, the ACJ has taken the necessary steps and precautions to help stop the spread of COVID-19 amongst the population. As of 2/4/21, according to its website https://www.alleghenycounty.us/jail/index.aspx, the ACJ  has four positive inmate COVID cases. The Jail has continued to follow guidance of health officials; it isolates positive cases, it performs contact tracing and it quarantines those individuals.  In addition, it conducts ongoing screening, limited visitations, and its staff has begun to receive the vaccines.  There is no

indication in the record that Defendant's medical needs are not being met at the ACJ.

In addition, Chief Judge Hornak's Administrative Order postponed all federal criminal trials scheduled to commence through May of 2021. Misc. No. 2:20-mc-394-MRH. In fact, this Court also issued Orders continuing its own in-person criminal proceedings, in most if not all of its criminal cases. This Court has done so, in part, to ensure the health and safety of Defendant (and all other defendants) in this case, by reducing Defendant's exposure to additional individuals in the community. This also diminishes the likelihood that this Defendant (and other defendants), while traveling to and from the jails for proceedings in the Federal Courthouse, becomes exposed to the virus, and then returns to the jails only to inadvertently spread the virus within the jail.

Broadly speaking, the court only authorizes pretrial release for a defendant at risk of COVID-19 reinfection where the defendant was at the "highest risk" of severe illness from COVID-19 due to his medical conditions. See United States v. Salley, No. 19-688, 2020 WL 7024253, at *7–9 (E.D. Pa. Nov. 30, 2020). Defendant does not fall within that category. "[S]peculation at this point about what may, or may not, occur at the ACJ at some point in the future does not constitute a 'compelling reason' for temporary release at this time." United States v. Jones, 2020 WL 1511221 * 3-4, 2:19-CR-00249-DWA (March 29, 2020) (Dodge, M.J, denying motion for reconsideration of detention order).

### III.    CONCLUSION

For the reasons detailed herein, the Court concludes that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released pending trial. Accordingly, Defendant's motion for review of detention order is denied.

An appropriate Order follows.

## **ORDER OF COURT**

AND NOW, this 9th day of February, 2021, for the reasons set forth in the Memorandum above, IT IS ORDERED that Defendant's Motion for Review of Detention Order (Docket No. 117) is DENIED.

*s/ Robert J. Colville*
Robert J. Colville
United States District Judge

cc/ecf:  All counsel of record